IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMY KAY PARSONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-24-75-STE |
| ) | |
| MARTIN O'MALLEY, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a supplemental transcript (ECF No. 19) of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

### I.     PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 17-30). The Appeals Council denied

Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 413.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 14, 2021, the alleged onset date. (TR. 20). At step two, the ALJ determined Ms. Parsons suffered from the following severe impairments: degenerative disc disease of cervical spine status post-surgical repair; degenerative joint disease; depressive disorder; schizoaffective disorder; anxiety disorder; and chronic pain disorder. (TR. 20). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 21).

At step four, the ALJ concluded that Ms. Parsons retained the residual functional capacity (RFC) to:

> [P]erform a limited range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently. The claimant can sit, stand, and/or walk a total of six hours per day each throughout an eight-hour workday for 30-minute intervals each. The claimant can walk at a reasonable pace the distance of a block. The claimant is left hand dominant. The claimant is limited to frequent crouching, crawling, kneeling, and climbing stairs/ramps. The claimant can never climb scaffolding, ropes, or ladders. The claimant should avoid concentrated exposure to environments with extreme cold, humidity, and vibration. The claimant must avoid hazards, including dangerous machinery and unprotected heights. The claimant can understand and remember simple instructions with up to two or three steps in a regular work setting. The claimant can use appropriate judgment to make simple work-related decisions. The claimant should have

>no more than occasional contact with supervisors and co-workers. The claimant should have no more than incidental contact with the general public as part of the job functions. The claimant cannot perform work requiring a specific production rate, such as assembly line work, or work that requires hourly quotas. The claimant should have no job requiring more than occasional changes in a routine work setting.

(TR. 23).

With this RFC, the ALJ concluded that Plaintiff was unable to perform her past relevant work. (TR. 28). As a result, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 68-69). Given the limitations, the VE identified three "light" jobs from the Dictionary of Occupational Titles (DOT). (TR. 69-70). At step five, the ALJ adopted the VE's testimony and concluded that Ms. Parsons was not disabled based on her ability to perform the identified jobs. (TR. 29-30).

### III.   ISSUE PRESENTED

On appeal, Ms. Parsons alleges error in the ALJ's failure to properly evaluate records related to Plaintiff's mental health. (ECF No. 20).

### IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means

3

only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

**V.    NO ERROR IN THE CONSIDERATION OF CLIENT ASSESSMENT RECORDS**

In September 2021, March 2022, and October 2022, Plaintiff received mental health treatment at the Central Oklahoma CMHC. *See* TR. 380-389, 971-982, 1365-1373. Ms. Parsons argues that the ALJ failed to evaluate these records utilizing the proper regulatory standards. (ECF No. 20). The Court disagrees.

**A.    The Challenged Evidence**

As part of Plaintiff's mental health treatment at the Central Oklahoma CMHC, three medical providers completed a "Client Assessment Record" (CAR) for Ms. Parsons which evaluated her mental health in ten domains:

- Feelings/mood/affect;
- Thinking/mental process;
- Substance use;
- Medical/physical;
- Family;
- Interpersonal;

- Role performance;

- Socio-legal;

- Self-care/basic needs; and

- Communication

(TR. 380-383, 971-975, 1365-1367). In each domain, the provider assessed Plaintiff with a score ranging from 1-50. *See* 380-383, 971-975, 1365-1367.[1] According to the Prior Autorotation Manual—which provides guidelines for authorizing behavioral health services for state-provided insurance—as the number increases, the impairment is deemed more severe, with the scores translating into functional descriptions such as "above average," "mild to moderate," and "incapacitating."[2] For Ms. Parsons, medical providers assessed her domains with scores ranging from 20-39, which would translate into functional limitations in the "mild to moderate" and "moderate to severe" ranges. *See* TR. 380-383, 971-975, 1365-1367; Prior Authorization Manual at 52. However, the CAR itself, as presented in the record, is reflected only by a score, followed by a narrative. *See* 380-383, 971-975, 1365-1367. For example, on September 23, 2021, Jill Davis, licensed clinical social worker, assessed Plaintiff with a "38" in the area of "feelings/mood/affect" and provided the following narrative:

> MS. PARSONS REPORTS HAVING DEPRESSION, ANXIETY AND HAVING PANIC ATTACKS. NOW FEELS "APATHY." FEELS OUT OF CONTROL, NO CONTROL OVER FEELINGS, FEELS OVERWHELMED, BUT IS NOW ABLE TO COPE WITH IT. PANIC ATTACKS ARE TRIGGERED BY STRESS LEVEL. PANIC

---

[1] *See also* https://oklahoma.gov/content/dam/ok/en/okhca/docs/providers/prior-authorizations/FY23%20PA%20Manual_final.pdf (last visited July 18, 2024) at 51-52 (Prior Authorization Manual).

[2] *Id.* at 52.

> ATTACK ONCE IN PAST MONTH, THE WORST ONE SHE HAS EVER HAD. RIGHT NOW DEPRESSION LEVEL IS HIGH, STILL HAVING PANIC ATTACKS BUT THEY ARE FEWER. NOT GOOD AROUND PEOPLE GETS NERVOUS AND ANXIOUS WHEN SHE IS AROUND PEOPLE. NO ENERGY, NOT MOTIVATED TO DO ANYTHING, BUT THIS IS BETTER. GETS FRUSTRATED AND AGGRAVATED, VERY IRRITABLE. DEPRESSED, FEELING HOPELESS, FEELS SHE IS BETWEEN A ROCK AND A HARD SPOT – WANTS TO MOVE FORWARD WITH LIFE BUT FEELS LIKE SHE CAN'T. MOOD SWINGS. GETS TIRED OF TAKING PILLS BUT KNOWS SHE NEEDS TO TAKE THEM. SHORT FUSE IS BETTER. MOSTLY MAD AT HERSELF. FEELS SHE SHOULD BE ABLE TO STAND ON OWN 2 FEET BUT CANNOT. MS. PARSONS REPORTS THAT A LOT HAS BEEN GOING ON IN HER LIFE, MAKING HER STRESSED. SHE STATES SHE GETS MANIC EVERY ONCE IN AWHILE.

(TR. 380).

### B. Plaintiff's Argument and Related Regulatory Guidelines

Ms. Parsons argues that the CAR scores are "medical opinions" which the ALJ failed to properly evaluate under the governing regulations. (ECF No. 20). The Court disagrees. The Social Security Administration has defined categories of evidence, including, as pertinent here, "medical opinions" and "other medical evidence." *See* 20 C.F.R. § 404.1513(a)(2), (3); 416.913(a)(2), (3). The regulations define a "medical opinion" as "a statement from a medical source about what an applicant can still do despite his impairment(s) and whether he has one or more impairment-related limitations involving the:

> (A) Ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (B) Ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

6

      (C) Ability to perform other demands of work, such as seeing, hearing, or using other senses; or the

      (D) Ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2), 416.913(a)(2). Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. See 20 C.F.R. §§ 404.1513a(b)(2), 404.1520c, 416.913a(b)(2), 416.920c. In doing so, the ALJ need only articulate how persuasive she finds the medical opinion. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). Persuasiveness is determined primarily by an opinion's supportability and consistency, and the ALJ must explain how she considered those factors. 20 C.F.R. §§ 404.1520c(b)(2) & (c)(1)-(2); 416.920c(b)(2) & (c)(1)-(2). "Supportability" refers to the ALJ examining the medical source's own medical evidence and supporting explanations to determine whether the source's opinion (based on the evidence) is persuasive. 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). "Consistency" involves comparing the medical source's opinion with other medical evidence and prior administrative findings to see whether the opinions and evidence are consistent. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

      The regulations define "other medical evidence" as "including judgments about the nature and severity of [a claimant's] impairments, . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3); Duran v. Berryhill, No. CIV-18-50, 2019 WL 1370101, *9 (D. N.M. March 26, 2019) (report containing results and interpretation of standardized tests, a summary of information claimant provided in a behavioral rating, diagnoses and recommendations were not "medical opinions"). When evaluating "other medical evidence" the ALJ is not required to

7

consider the "medical opinion" factors listed above. *See supra*; *see M.H. v. Kijakazi*, No. 1:21-CV-01797-CNS, 2023 WL 2401063, at *5 (D. Colo. Mar. 8, 2023) ("The ALJ is not required to articulate the persuasiveness of other medical evidence with reference to supportability and consistency.").

### C.     No Error in the ALJ's Evaluation of the CAR

The key issue in addressing Plaintiff's challenge turns on whether the CARs are considered "medical opinions." The Court concludes that they are not. *See Tipton v. Commissioner of the Social Security Administration*, No. CIV-20-359-KEW, 2023 WL 2525036, at *4 (E.D. Okla. Mar. 15, 2023) ("The CAR findings do not include specific functional limitations and do not constitute a medical opinion."); *Jennifer V. v. Kijakazi*, No. CV-654-CDL, 2022 WL 852867, at *7 (N.D. Okla., Mar. 22, 2022) ("Under the applicable regulations, CAR evidence is not a medical opinion. Medical opinions are defined as 'statement[s] from a medical source about what [the claimant] can still do despite [their] impairment(s)[.]' 20 C.F.R. § 416.913(a)(2). Rather, CAR scores are considered '[o]ther medical evidence,' i.e., 'judgments about the nature and severity' of a patient's impairments. 20 C.F.R. § 416.913(a)(3). As such, the ALJ was not required to articulate the persuasiveness of this evidence. 20 C.F.R. § 416.920c(b).").

Plaintiff argues that the CAR scores "correlate" to certain severity ratings and functional limitations which are located in the Prior Authorization Manual. For example, Ms. Parsons states:

> Parsons' CAR score of 38 in the second domain correlates to the following: "[m]ild to moderate retardation, but can function with supervision. Delusions and/or hallucinations interfere with normal daily functioning. Frequently disoriented as to time, place, or person. Person is unable to

> remember recent or past events." *Id.* at 54. For a final example, Parsons' score of 36 in the sixth domain corresponds to the following functional abilities: "[h]as difficulty making and keeping friends such that the relationships are strained or tenuous. Generally rejects or is rejected by co-workers; tenuous job relationships.

(ECF No. 20:10). But the problem with Plaintiff's argument, as noted by the Commissioner, is that "to the extent such scores might arguably relate to Plaintiff's ability to work, this is not apparent on the face of the Client Assessment Records, themselves. The ALJ was required to base her decision on the evidence adduced at the hearing and was not free to consider extra-record information, such as the 'Prior Authorization Manual' details Plaintiff now highlights." (ECF. No. 21:8) (citing the Hearings, Appeals, and Litigation Law Manual (HALLEX) I-2-6-56, which states: "Under sections 205(b) and 1631(c) of the Social Security Act, an administrative law judge (ALJ) must base his or her decision on "evidence adduced at the hearing.").

As stated, the regulations define a "medical opinion" as a statement from a medical source about what an applicant can still do despite his impairment(s) and whether he has one or more impairment-related limitations involving [various abilities.]" *See supra*. But here, the CAR scores, standing alone, simply do not constitute medical opinions. Furthermore, the accompanying narratives, which Plaintiff argues "are the most comprehensive assessments of Parsons' mental functioning within the record" do not constitute "medical opinions" either. Instead, comments such as "not good around people," or "gets frustrated or angry" do not define specific work-related limitations.

The Court finds that the CARs are considered "other evidence," not subject to the strict analysis required by the ALJ under the regulatory factors discussed above. *See*

*supra*. The ALJ clearly discussed the evidence in the CAR. *See* TR. 20-22, 24-27. Under the regulations, that was all she was required to do.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on August 13, 2024.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE